STATE OF WISCONSIN ex rel WOLFF VS. THE BOARD OF
SUPERVISORS OF SHEBOYGAN COUNTY.

COUNTY TREASURER. *Duty as to refunding taxes. Mandamus will not lie
to compel allowance for moneys so paid.*

1. Under sec. 26, ch. 22, Laws of 1859, it is the duty of the county treasurer
to refund moneys paid on tax sales, or for subsequent taxes and
charges paid by the purchaser at such sales, with interest at seven per
cent., whenever it appears that for any error or irregularity the land
sold ought not to be conveyed, and the clerk of supervisors has re-
fused such conveyance.
2. Although ch. 112, Laws of 1867, and ch. 56, Laws of 1868, bar the right
to a tax deed after six years from the date of the tax sale, they do not
limit to six years the liability of the county to refund moneys due
upon defective tax certificates.
3. Where the county board, in examining and settling the treasurer's
accounts, refuses to credit him with any moneys which he has paid
out pursuant to law, his remedy is by appeal from their decision
(under sec. 40, ch. 13, R. S.) as in the case of other persons whose
claims against the county are disallowed; and *mandamus* will not
lie to compel the allowance of such credits, either before or after the
expiration of the time for such appeal.

LYON, J., *dissenting* as to the third proposition, is of opinion that the
settlement of the county treasurer's accounts is regulated by sec. 27,
ch. 13, R. S.; that sec. 40 does not apply thereto; that the treasurer
has no right of appeal under sec. 40, from the action of the board in
such a settlement; and that *mandamus* is therefore his proper
remedy.

APPEAL from the Circuit Court for *Sheboygan* County.

This was an application by a former county treasurer of She-
boygan county, for a peremptory writ of *mandamus*, to compel
the county board of supervisors to audit and allow certain por-
tions of his accounts as such treasurer, which they had, at two
annual sessions, refused to allow. The relation states, in sub-
stance, that the relator, as treasurer, was in November, 1867,
instructed and directed by the county board, to investigate cases
coming to his knowledge, wherein it was alleged by the holders
of tax certificates or tax deeds that, on account of some error

or irregularity in the tax proceedings on which they were based, the sales were invalid, and if he found that on account of such errors or irregularities, the lands sold ought not to be conveyed or the deeds already issued were void, that he should pay to the holders on behalf of the board, the amounts they would have been entitled to receive under sections 26 and 27, chapter 22, Laws of 1859, had they presented their claims in accordance therewith; that in pursuance of such instructions he paid a large amount of such claims previous to November, 1868, and the same were audited and allowed by the board; that during the following year he continued to investigate such cases, and make such payments to a very large amount, and particuly that, under the provisions of section 26, chapter 22, Laws of 1859, he paid to holders of tax certificates, on which the clerk of the board of supervisors had refused to issue deeds when demanded, because of some error or irregularity in the tax proceedings, the gross amount of $3,360.45 for principal and interest at seven per cent., giving a list of such certificates and the amount paid upon each; that he presented his accounts and vouchers therefor to the board at their annual session in 1869, and the board refused to allow the amount so paid by him on such last mentioned certificates, on the ground that they were all barred by chapter 112, Laws of 1867, as amended by chapter 56, Laws of 1868, limiting the time within which tax deeds might issue on such certificates; that he presented the same account to the board at their annual session in November, 1870, and a committee appointed to settle with him recommended the allowance thereof, but the board refused to allow it; that as a matter of fact, all the certificates but three had been charged back to the respective localities where the lands were situated, and the moneys collected and paid over to or held for the county; and that he is entirely without remedy except by writ of *mandamus*, which he prays may issue to compel the board to audit and allow such accounts.

From the order of the court refusing to issue the writ, the relator appeals.

*Bentley & Seaman & J. M. Gillet,* for relator, argued that the certificates were a valid subsisting claim against the county, citing *Lain v. Shepardson,* 23 Wis., 224; that there was no statute of limitations against the special remedy afforded by secs. 26 and 27, Laws of 1859, citing *Pelton v. Supervisors,* 10 Wis., 69; that the action of the clerk of the board in refusing to issue deeds was judicial and not reviewable by the treasurer, but he was bound to pay to the holders of the certificates, and the amounts paid were properly chargeable to the county; that the only question for examination was whether the reason assigned for refusing to allow the accounts was well founded in law, and therefore, *mandamus* was the proper remedy, citing Moses on Mandamus, 61, 85, 103; 14 Ind., 93; 2 Cal., 165; 28 Cal., 429; 18 La., 195; 20 N. Y. 252; 24 id., 114; 32 id., 473; 19 Johns., 259; 18 id., 241; *State ex rel. Van Vliet v. Wilson,* 17 Wis., 687; *State ex rel. Carpenter v. Hastings,* 10 Wis., 518; 12 Peters, 526; and that no appeal would lie in such a case.

*Conrad Krez,* for respondent, contended that the power given by statute to the county board of supervisors to examine the vouchers and settle the accounts of the county treasurer, was a judicial power, and included the right to determine on the sufficiency of the vouchers; and that they were not concluded by the decision of the treasurer as to the existence of errors or irregularities for which lands sold ought not to be conveyed, citing *Stringham v. Supervisors of Winnebago County,* 24 Wis., 594; especially where they had expressly forbidden him to make payments on such certificates; that the statute of limitations had run against the certificates in question, so that no deed could issue, and the authority given to the clerk to investigate the regularity of the proceedings then ceased, citing *Smith v. Packhardt,* 12 Wis., 371; *Lain v. Shepardson,* 23 Wis., 224.

COLE, J. It seems to us that the relator took a very correct view of the law, and of his duty to refund the money due upon

the tax certificates mentioned in the relation when they were presented to him for payment. The statute is very clear and explicit on the subject. Section 26, chapter 22, Laws of 1859, enacts that after a certificate shall have been issued at a tax sale, if the clerk of the board discovers "that for any error or irregularity, the lands sold ought not to be conveyed, he shall not convey the same, and the county treasurer shall, on demand, refund the amount paid therefor on such sale, and all subse-quent taxes and charges paid thereon by the purchaser or his assigns, out of the county treasury, with interest on the whole amount at the rate of seven per cent. per annum." This enactment makes the county liable for the amount due upon tax certificates, where error or irregularity have intervened in the proceedings so as to invalidate the sale, and it imposes upon the treasurer the clear duty of refunding the money with interest out of the county treasury. That this is a correct view of the force and meaning of this provision of the statute seems to us very plain. The amounts refunded, therefore, by the treasurer to the holders of irregular and defective tax certificates, were moneys legally and properly paid by him for the use of the county. And the county, upon every principle of right and justice, should allow the relator credit for payments thus made for its benefit.

It appears, however, that the county board refused to allow the payments made by the relator upon the tax certificates, upon the ground and for the reason that the holders of the certificates had lost their claim to have the amounts refunded by lapse of time. It is said that tax deeds were barred upon all these certificates under chapter 112, Laws of 1867, as amended by chapter 56, Laws of 1868, and therefore, the liability of the county to refund the moneys due upon them was gone. It is true these statutes, except in certain cases which need not be referred to, limit the period within which a tax deed may be issued upon a tax certificate to six years from the day of the tax sale. But they do not profess or attempt to limit the lia-

bility of the county to refund moneys due upon defective tax certificates to six years. There is no such exception in the law of 1859, and for the most obvious reasons, the courts have no right to incorporate such an exception in that statute by construction; for, to do so, would be nothing less than assuming the power to prescribe a limitation to a liability, when the legislature has not seen fit to enact one. The liability of the county to refund, under the statute of 1859, is absolute, and is not made to depend upon the fact that a tax deed is not barred upon the certificate. And the county board were clearly wrong in supposing the county was no longer liable to refund the moneys on these defective tax certificates because tax deeds were barred upon them by the statutes of 1867 and 1868 just cited; for the only object and effect of these enactments are to limit, with certain exceptions, the time for issuing tax deeds upon tax certificates to the period of six years from the day of sale, applying of course to cases where there was no error or irregularity in the proceedings which invalidated the sale. The certificates mentioned in the law of 1859 are *defective* certificates, where, on account of some informality, the lands sold "ought not to be conveyed."

And, in respect to those certificates, the legal obligation of the county to refund the amounts paid thereon and interest is absolute and unqualified, and the courts clearly have no authority for making an exception to such liability, where the legislature has made none. So that we think the county board was manifestly wrong in refusing to allow the relator's account for moneys refunded by him on the tax certificates mentioned in the relation. But, while this is so, we do not see how a *mandamus* can be granted to compel the board to audit and allow this account without a violation of well settled principles of law; for we suppose the doctrine to be elementary that a *mandamus* will not be granted where the party has a clear, specific remedy by an action. This principle has been so frequently recognized and acted upon by this court that the cita-

tion of decisions in its support is deemed unnecessary. It is only in cases where there is a specific legal right to be enforced, or where there is a positive duty to be performed, and when there is no other adequate legal remedy, that the writ of *mandamus* issues. See cases cited in Simmons, Dig., under the head of "Mandamus." Perhaps the case of the *State ex rel. Van Vliet v. Wilson et al.*, 17 Wis., 687, goes as far to sustain this application as any one which can be found in our reports, and yet it hardly supports it. There the writ was granted to compel the town board to proceed and audit the amount allowed the relator for damages in laying out a highway over his land. These damages had been assessed by commissioners under the statute, but the town board refused to audit the claim and to take steps to levy a tax to pay the same with other town charges. And this court issued a *mandamus* to compel the town board to proceed and perform this clear legal duty which the statute imposed upon them, notwithstanding the fact that the relator had a right of action against the town on the award of the commissioners. And one consideration which had weight with the court was that, if the relator should bring his action against the town and recover on the award, he would be in no better condition than he then was, in respect to his claim, and would probably have to proceed, by *mandamus*, to compel the town authorities to levy a tax to pay the judgment.

In the present case it appears the relator presented to the county board, at its annual meeting, his account for the moneys refunded by him on those tax certificates. That this was a proper matter to come before the board for examination and allowance, is a very plain proposition. The board has, by statute, power "to examine and settle all accounts of the receipts and expenses of the county, and to examine, settle and allow all accounts chargeable against such county." Sub. 2, sec. 27, chap. 13, R. S. The moneys refunded on the defective certificates manifestly constituted a proper claim or demand against the county. It was money paid out for the use and benefit of the county.

It was a claim or demand upon which a sum was due the relator from the county, and the county board were authorized to examine and allow it, by virtue of the power vested in the board by statute. *Stringham v. The Board of Supervisors of Winnebago Co.*, 24 Wis., 594. The relator, it appears, proceeded upon the assumption that these payments constituted proper charges against the county, and he embraced them in his accounts which he presented to the board. He was obviously right in so treating these claims. They were just and lawful credits, which the board should have allowed him. But the board disallowed the accounts, upon the supposition that these moneys were improperly refunded on the tax certificates, and that the holders had lost the right to demand the sums due upon them by reason of the statute of limitations. In this conclusion, as we have said, the board fell into an error. The amounts, when paid by the relator, were valid subsisting claims against the county. The relator could not do otherwise than pay them while he had funds belonging to the county to meet them. But what should he have done when the board disallowed these claims or payments made by him? The statute furnished the remedy. " When any claim of any person against a county shall be disallowed, in whole or in part, by the board of supervisors, such person may appeal from the decision of such board to the circuit court for the same county." Section 40.

Here was a plain, adequate remedy by action, furnished the relator for the correction of the decision of the board. The statute in the clearest language gave him an *appeal* to the circuit court from this determination disallowing those payments. This remedy the relator should have adopted instead of applying for a *mandamus* to correct the erroneous decision of the board. True, his right to appeal from the decision of the board has expired, but that fact can make no difference with our determination on this application. He had a plain legal remedy, but the fact that he has neglected to pursue it, and has now lost his right to appeal, constitutes no sufficient ground

State ex rel Wolff vs. The Board of Supervisors of Sheboygan County.

for granting a *mandamus*.  If it did, then the writ should be granted in every case, to correct the erroneous decision of an inferior tribunal, when the aggrieved party has failed to appeal from such a decision within the time allowed by law.  It must be apparent that the writ of *mandamus* has not been awarded for such a purpose, but only where no adequate specific remedy by action exists.  But, although the relator may have mistaken his remedy, and may have lost his right to appeal from the decision of the county board disallowing these payments, still it is not to be supposed the board—when informed of this determination, and that those payments were properly made—will any longer refuse to allow them in their settlement with him.  It would, as it appears to us, be morally wrong for them to do so, and inconsistent with that high and honorable conduct which should regulate the action of such a body.

But, as this case now stands, we have no other alternative than to affirm the order of the court below.

LYON, J., *dissenting.*  I fully concur in the opinion that the moneys paid by the relator to the holder of the irregular and defective tax certificates were legally paid, and that the board of supervisors should have settled and adjusted his account upon the basis that the same were legal payments.  I agree, also, that, if the relator had the right of appeal to the circuit court from the determination of the board, he cannot have a *mandamus* to compel the board to reverse its action in that behalf.

But I dissent from the proposition that the relator had the right of appeal from the determination of the board of supervisors refusing to settle and adjust his accounts on that basis. If he had such right, it must necessarily have existed by virtue of some statute, and in my opinion the statute, which gives the right of appeal from the decisions of the board in certain cases, does not extend to cases like the one under consideration.  Rev. Stats., chap. 13, sec. 40.

Section 27 of the same chapter gives the board of supervisors power "to examine and settle all accounts of the receipts and expenses of the county; and to examine, settle and allow accounts chargeable against such county, and, when so settled, they may issue county orders therefor, as provided by law."

I understand that this provision refers to two separate and distinct classes of accounts, to-wit: 1st. Accounts of the receipts and expenses of the county; that is, the accounts of the treasurer or any other officer or person, who has received or disbursed the funds of the county, in respect thereto. These are to be *examined* and *settled*, and, when settled, the transaction is at an end. 2d. Accounts chargeable against the county, which are the claims of individual creditors of the county. These are to be not only *examined* and *settled*, but in addition thereto are to be *allowed* or *disallowed*, and if allowed, county orders are to be issued therefor.

The distinction between these two classes of accounts runs through the statute. For example, the provision contained in section 37, requiring certain accounts to be verified by affidavit, evidently relates to the second class alone. It will not be claimed, I apprehend, that the board could lawfully refuse to settle with the treasurer merely because he had failed to verify his account by affidavit. Section 128 requires the production of books and vouchers with the treasurer's account of county funds received and disbursed by him, and not an affidavit. This will serve as an example of the distinction which the law makes between these two classes of accounts.

If such distinction does, in fact, exist — if the duty and power "to examine and settle the accounts of the receipts and expenses of the county," is not identical with the duty and power "to examine, settle and allow accounts chargeable against such county," but is a separate and distinct duty and power, to be exercised in accordance with provisions of law specially and peculiarly applicable thereto — then it seems to me perfectly clear that the right of appeal from the decision of the board is

confined by the statute to the latter class of accounts, and has no application whatever to accounts "of the receipts and expenses of the county." For such right of appeal is only given " when any claim of any person *against a county* shall be disallowed, in whole or in part, by the board of supervisors," and is not given in a case like the present, where the board has refused to *settle*, upon a just and legal basis, the account of a disbursing officer of the county, in respect to the county funds disbursed by him according to law.

But, an elaborate argument of the question will serve no useful purpose, and I content myself with this brief statement of the grounds upon which I dissent from the opinion of my brethren on the point under consideration.

It would follow from these views that a writ of *mandamus*, to compel the board to settle and adjust the account of the relator, on the basis that the county funds paid by him to the holders of the defective tax certificates, were legally paid, and that the county was bound by such payments, should have been awarded. I am of the opinion, therefore, that the order of the circuit court refusing to award the writ should be reversed.

*By the Court* — The order is affirmed.