CASE No. 1046.

## EX PARTE MACKEY.

1. An order of the Circuit Court refusing to grant a writ of *mandamus*, is appealable.
2. The Circuit judge refused to grant a writ of *mandamus* to compel a county board of election canvassers, then in session, to count the votes in a certain box; the board, which, by law, could not remain in existence for more than ten days, ceased to exist before petitioners brought their case by appeal to this court. *Held*, that no order made in the case by this court could accomplish the purpose desired, and, therefore, no writ of *mandamus* should be ordered to issue.
3. Under the election laws of this state the duties of the board of county canvassers are so far ministerial that they may be enforced by writ of *mandamus* when no other remedy exists, but where, as in case of county officers, appeal lies to the state board of canvassers, whose powers are revisory and judicial, such other remedy does exist, and *mandamus* cannot issue.
4. In cases of election for member of congress, the state board of canvassers acts ministerially and are excluded by the terms of the statute from revisory and judicial powers, and the power of congress to judge of the election returns of its members, does not constitute another remedy within the meaning of the rule. Therefore, in such case, *mandamus* to the county board is a proper remedy.

Before WALLACE, J., Charleston, November, 1880.

These were petitions by E. W. M. Mackey, and the other parties mentioned in the opinion of this court, presented to Judge Wallace, then holding the Circuit Court in Charleston, for writs of *mandamus* to compel E. L. Roche, T. W. Carwile and H. J. McCormack to count the votes at "Brick Church" and "Ten Mile Mill" precincts. Judge Wallace granted an order in each case, on November 10th, 1880, requiring the defendants to show cause before him, at chambers, on the next day, why a writ of *mandamus* should not issue. Upon hearing the return the rule was discharged. The relators gave notice of appeal on November 16th. The opinion states the case.

*Mr. D. T. Corbin*, for appellant.

The petitioners were entitled to the writ of *mandamus* as a remedy for the wrongs complained of. Under the statute, the duty of the election commissioners was to count the votes and make a statement of the result of such count. *Gen. Stat., ch. VIII.*, §§ 16, 18. There is no discretion given to them. *McCrary on Elect.*, §§ 81–85; 1 *S. C.* 40. The parties complaining of such result have their remedy elsewhere. 4 *S. C.* 504. The board of canvassers are not to make a statement of the election, but a statement, or record, of the count. Here is a plain legal duty, and no discretion. *Mandamus* is, therefore, the proper remedy. *Moses on Mand.* 14, 90; *Wood on Mand.* 76, 77; *McCrary on Elect.*, §§ 320, 331; *Bright. Elect. Cas.* 300, and note; 1 *S. C.* 40; 4 *S. C.* 232, 472, 506; 5 *S. C.* 264; 6 *S. C.* 128; 7 *S. C.* 258, 282, 376; 8 *S. C.* 377. The writ should not be refused because there is another remedy, unless it is as effectual, plain and speedy. 1 *Cranch* 169; *Wood on Mand.* 84, 89, 109. The true test seems to be, would the party, by the use of the other remedy, be in as good a position? *Id.* 68, 77, 114. If petitioners go to the state board of canvassers they go as defeated candidates and as actors. The state board can change the report only when there is a protest, and not then, if the power to decide resides in some other body. The petitioner, Mackey, has no remedy by appeal to the state board. 8 *S. C.* 377.

The state board, in its ten days of existence, cannot properly

hear and determine, therefore the necessity of this writ to compel
the county board to do their duty. ·

*Mr. C. R. Miles,* contra.

The appeal should be dismissed, because the writ now would
be nugatory, vain and useless, as the county board have, since
the decision of Judge Wallace, adjourned *sine die,* so far, at
least, as the general election of 1880 is concerned. *Tapping
on Mand.* 15, 402; *Moses on Mand.* 88; *Wood on Mand.* 18,
89; 72 *E. C. L.* 199, 874; 6 *E. L. & E.* 228; 7 *Rich.* 234;
4 *S. C.* 185; *Cooley on Const. Lim.* 785. The state board
have also decided, and adjourned *sine die.* The only object of
appeal, then, must be to get an opinion here for use elsewhere,
which should not be. *Tapping on Mand.* 16.

But the order was right. If the duties of the county board
are not purely ministerial, but are, to any extent, judicial or
*quasi* judicial, then it is clear that the writ of *mandamus* should
not have been issued to compel them to do what, "upon consid-
eration" and in the exercise of that discretion, they had "deter-
mined" they could not lawfully do. *Tapping on Mand.* 12;
*Moses on Mand.* 36; *McCrary on Elect.,* § 86. Cases cited by ap-
pellant are based upon the construction given to statutes, which,
unlike the law here, limit the powers of election boards to mere
ministerial duties. The powers of county boards, under our
statute, have been considered by our Supreme Court. 4 *S. C.*
485; 5 *S. C.* 263; 7 *S. C.* 241. These cases decide that the
county boards have the right and power to *scrutinize, examine,
determine* and *declare.* These functions imply the exercise of
discretion, are judicial, and cannot be controlled by *mandamus.*

*Mr. J. P. K. Bryan,* same side.

The remedy by *mandamus* is inapplicable, because petitioners
had another plain and adequate remedy. *High on Ex. Leg.
Rem.* 15, 18; 29 *Wis.* 79. These petitioners had another ade-
quate remedy by appeal to the state board of canvassers, and this
remedy they invoked and succeeded to the extent of gaining
twenty-five hundred votes. This is plain as to the county offi-
cers. As to member of congress, he has the same plain and ade-

quate remedy by protest and contest to the United States house of representatives. This matter being regulated by statute law of the United States, the state could not give relief. Besides the official returns of supervisors, United States officials, are sent to the congress. *Rev. Stat. U. S.*, §§ 2018–2020.

July 1st, 1881. The opinion of the court was delivered by

McGowan, A. J. At the general state election, November 2d, 1880, the petitioners were candidates for office, viz., E. W. M. Mackey for congress in the second congressional district in the state, of which Charleston county is a part, and the others for the county offices of Charleston county, that is to say, John H. Ostendorff for the office of clerk of the Court of Common Pleas and General Sessions, Lewis Dunneman for that of sheriff, Warren R. Marshall for that of judge of probate, William H. Thompson for coroner, and Garrett Byrns, Renty K. Washington and A. E. Philippy for the offices of county commissioners of Charleston county. These parties on November 10th, 1880, jointly filed in the Court of Common Pleas the two petitions stated in the caption for writs of *mandamus* against the defendants as commissioners of election for the county of Charleston; the first to require the commissioners to canvass and count the votes cast at what was known as the "Ten Mile Hill" precinct of St. James, Goose Creek, and the other to canvass and count the votes cast at the "Brick Church" precinct, St. Andrews.

The allegations of the petitioners and the defence of the commissioners are the same in both cases, and we will therefore consider them together. The petitioners, among other things, state that "your petitioners, on information and belief, say that said commissioners of election, Edward L. Roche, Thomas W. Carwile and H. J. McCormack, disregarding their plain legal duty therein, have refused, though requested so to do, to canvass and count the votes cast and canvassed at said precinct, and duly returned to them, and have excluded and intend unlawfully to exclude from the aggregate vote of said county the said votes cast, canvassed and returned at said precinct. That irreparable injury is done your petitioners by said election commissioners by their said refusal to canvass and make proper statement of the

votes cast at said precinct, and your petitioners are remediless in the premises unless granted to them through the writ of *mandamus.* And your petitioners therefore pray that a writ of *mandamus* do issue, directed to said Edward L. Roche, Thomas W. Carwile and H. J. McCormack, commissioners of election for Charleston county, ordering and directing them, said commissioners of election, to proceed to count the votes cast at said precinct, and to include them in the count of votes for said county, cast at said general election, and to make such statement thereof in connection with the other votes cast in the said county as the nature of the election requires."

The defendants made return that " in pursuance of law they have duly organized themselves into a board of county canvassers, and as such board are now engaged in the performance of their legal functions, and as such board they have made a statement of the election held at the said precinct, such as the nature of the election requires. That upon consideration of the returns from the said precinct, and upon consideration of the sworn statements of the managers of the said precinct and others, that the said election at the said precinct was held by the said managers under duress and intimidation, and that violence and threats of violence and intimidation and overawing and terrorizing of voters at said polls and precinct, prevailed to such an extent as to prevent a full, free and fair exercise of the right to vote thereat, and these respondents sitting as a board of county canvassers, upon due consideration of the same, have determined that the said election at the said precinct was illegal and unlawful and void, and that they cannot lawfully include said votes cast at said precinct in the legally cast votes of the said county, and they have not so included them. But these respondents, in pursuance of law, have made a full and complete statement of the said circumstances as required by law, and intend to send and are about to send the statement, together with the statements of the managers at said precinct as aforesaid, and all papers relating to the said election at said precinct, and all protests thereof, to the governor and secretary of state and others, as required by law. And they further submit that the *writ of mandamus,* as prayed, is not issuable to them in the premises," &c.

The petitioners replied, denying that violence and threats of violence and intimidation existed at said precincts " to such extent as to prevent a full, free and fair exercise of the right to vote thereat," &c.

The application for the writ was made to Judge Wallace, sitting for Charleston, who refused it. The board of county canvassers, as indicated in their return, transmitted to the board of state canvassers the ballot boxes and papers connected with the election at the several precincts where the votes had not been counted by them, accompanied by the protests of the petitioners, and a special statement of the facts in relation to the several precincts, and the affidavits and papers filed, together with their reasons for not counting the same. It seems that the petitioners appeared before the state canvassers and urged their protests, which board took action on the matter as shown by the following result :

" *Resolved,* That this board overrules the action of the county board of canvassers as to the ' Haut Gap ' box, and accepts and acts upon the secondary evidence as to its contents as adduced before this board ; and that it accepts and will act upon the messenger's statements as to the ' Black Oak ' box ; and that there has been nothing adduced before this board to cause it to change the action of the board of county canvassers as to the following boxes, to wit: Calamus Pond, *Ten Mile Hill,* Strawberry precinct, Biggin Church, *Brick Church, St. Andrews,* and Enterprize, Wadmalaw."

After this action of the state board of canvassers as to counting the votes the petitioners prosecuted this appeal as to so much of Judge Wallace's order as refused the motion for *mandamus* in relation to the boxes at " *the Ten Mile Hill* " and "*Brick Church,*" upon the following exceptions :

" *First.* That it was error to refuse said writ of *mandamus ;* that the same should have been granted as prayed.

" *Second.* That the sixteenth section of Chapter VIII. of the General Statutes defines the duty of the commissioners of election of said county when acting as a board of county canvassers.

" *Third.* It was error to hold that if said commissioners, acting as a board of county canvassers, decided not to count said box, the court could not compel them to proceed and count it.

"*Fourth.* It was error not to have compelled said commissioners of election in this return to the rule to show cause to specifically state the facts constituting the ' duress and intimidation ' of the managers at said election, and its real effect upon them, by compelling a departure from their duty as managers and the effect thereof upon the election, and also the facts constituting ' violence and threats of violence and intimidation and overawing and terrorizing of voters at said poll and precinct,' and who and how many voters were prevented from voting thereby, to the end that the court might pass upon the propriety and legality of the decision of said commissioners of election in rejecting the votes cast at said precinct."

The last exception has not been pressed here. Whether the board of county canvassers were correct in their decision as to the alleged intimidation, violence and duress at the precincts in question, *was a question of fact*, as to which the evidence may have been and we suppose was considered by the board of state canvassers, but it was not considered by Judge Wallace, and is not before this court.

The other three exceptions make the point that it was error in Judge Wallace to refuse the *mandamus.* It is sometimes said that *mandamus* is not a writ of right, but lies in the discretion of the court, and in granting or refusing it the court should be governed by what seems to be necessary and proper to be done in the premises for the purposes of justice. If this means that it is in the absolute discretion of the judge to grant or refuse it there could be no appealable error in the order of a judge refusing it; for to say that a matter is within the discretion of a judge is but another mode of saying that it is beyond control. But we understand the discretion here spoken of to be that defined by Lord Mansfield in *Rex v.* Wilkes: " Discretion, when applied to a court of justice, means sound discretion guided by law. It must be governed by rule, not by humor ; it must not be arbitrary, vague and fanciful, but legal and regular."

The object of the writ prayed for in this case was to compel the board of county canvassers for Charleston county to canvass and count the votes cast at the " Ten Mile Hill " and " Brick

Church " precincts of Charleston county in the election of 1880. That board, under the law, could not remain in existence longer than *ten days*, and long before the appeal from the order of the Circuit judge reached this court it had ceased to exist as an organized body, certainly so far as the election of 1880 was concerned. When that board became "*functus officio*" it was no longer possible to accomplish the purposes of petitioners by *mandamus*, whether issued by the Circuit judge *sua sponte* or in compliance with the judgment of this court upon appeal.

One of the fundamental rules in reference to issuing writs of *mandamus* is that the writ will not be issued when it would be unavailing. "Thus it is held that a *mandamus* should not be granted when it would be unavailing from a want of power in the defendants, for the court would refuse the writ if it was manifest that it would be void and fruitless. Thus, a *mandamus* to compel a board of canvassers to do certain acts after they have ceased to exist as a board, would be futile. The Supreme Court may interfere to control the actions of a, board of canvassers while they exist as a board, but it can be done only while such board has a legal existence. And, when a *mandamus* is asked, it should appear that the defendants have it yet in their power to perform the duty required of them. Thus, a *mandamus* should not be issued to direct commissioners of excise to entertain the application of the petitioner after the board had met and completed the ten days prescribed in the act." *Wood on Mand.* 18; *Tapping on Mand.* 16; *State* v. *Lehre*, 7 *Rich.* 234; *State, ex rel. Shiver,* v. *Comptroller-General,* 4 *S. C.* 185. " The court will see that the object of the *mandamus* is for some proper and definite purpose, and not for the gratification of mere curiosity; nor will the court grant it when sought merely to obtain the opinion of the court upon a point of law." *Tapping on Mand.* 16.

As there is now in existence no board of county canvassers for Charleston county to canvass and count the votes cast in the election of 1880, no decision that this court can make will have the effect of accomplishing the purpose of petitioners. If this were an application in the original jurisdiction of this court it would undoubtedly be proper to refuse it. But as the application was

made in the court below, whilst the board of county canvassers were in organized existence, it may not be improper for us to consider whether the Circuit judge erred, as alleged, in refusing to issue the writ. The question is important in its relation to the electoral franchise and the purity of the ballot-box, so necessary in a republican government, which must take its character from that of the electors as certainly as the stream is affected by its source.

The question, then, is whether the Circuit judge erred in refusing to issue the *mandamus* to compel the county board of canvassers for Charleston to count the votes in the two boxes, notwithstanding the board had declined to do so for the reasons stated. A writ of *mandamus* is the highest judicial writ known to the constitution and laws, and, according to the long-approved and well-established authorities, only issues in cases where there is a specific legal right to be enforced, or where there is a positive duty to be performed, which can be performed, and where there is no other specific remedy; " where the legal right is doubtful, *or where the performance of the duty rests in discretion,* or where there *is other adequate remedy,* a writ of *mandamus* cannot rightfully issue. *High on Ex. Leg. Rem.,* § 9 ; *Wood on Mand.* 68, and many authorities.

Without stopping to inquire whether the first prerequisite exists, and the petitioners have a clear and undoubted right, we will consider—

1. *Whether the duties of canvassing boards in this state are discretionary, so as to place them beyond the reach of mandamus, or merely ministerial.*

This question must be determined by the statute law upon the subject. It is said in *McCrary on Elections* 106, 107 : " That the doctrine that canvassing boards and return judges are ministerial officers, possessing no discretionary or judicial powers, is settled in nearly or quite all the states. * * * There are statutes in some of the states which expressly confer upon a board of canvassing officers the power to revise the returns of an election, to take proof, and in their discretion to reject such votes as they deem illegal. Such a statute exists in Texas, (*Gidding* v. *Clark,* 42d *Congress*), and in Alabama, (*Norris* v. *Handly, Id.*), and in Louisiana and Florida. Although this is an extraordinary and

a dangerous power when placed in the hands of a board of this character with such inadequate facilities for obtaining legal evidence and deciding upon questions of fraud, yet it seems such statutes are not unconstitutional," &c.

The learned author does not undertake to construe the statute of South Carolina.

The laws of force in this state down to 1868 undoubtedly gave the board of managers of elections *quasi-judicial* powers in the words " to hear and determine the validity of the election." But in 1868 a new system was adopted, of which the following are important provisions relating to " the manner of conducting elections and returning votes." *Gen. Stat.* 31 :

" SECTION 14. The commissioners of election shall meet at the county seat, as prescribed in the last preceding section, and shall proceed to organize, and shall form the county board of canvassers.

" SECTION 16. They shall then proceed to count the votes of the county, and shall make such statements thereof as the nature of the election shall require, within ten days of the time of their first meeting as a board of county canvassers, and shall transmit to the board of state canvassers any protest and all papers relating to the election, &c.

" SECTION 18. They shall make separate statements of the whole number of votes given in such county for representatives in congress, and separate statements of all other votes given for other officers, &c.

" SECTION 20. After the final adjournment of the board of county canvassers, and within the time prescribed by Section 15 of this chapter, the chairman of the board shall deposit in the nearest post-office, directed to the governor, secretary of state, [and formerly the comptroller-general], each, one of the certified copies of the statement and certificate of votes prepared as provided in the last preceding section.

" SECTION 26. Upon such statements they [the board of state canvassers] shall then proceed to determine and declare what persons have been, by the greatest number of votes, duly elected to such offices or either of them. *They shall have power, and it is made their duty, to decide all cases under protest or contest that may*

*arise, when the power to do so does not, by the constitution, reside in some other body,"* &c.

It thus appears that the existing law establishes a system for ascertaining and declaring the result of elections, in which there are two boards, each with its proper functions—the county board to count the votes returned by the managers at the different precincts ; make such statements thereof as the nature of the election shall require, and transmit to the state board any protest and all papers relating to the election ; and then the state board of canvassers, who are required to meet, under the call of the secretary of state, for the purpose of canvassing the votes for all officers voted for at such election, make a statement of the whole number of votes given at such election, &c., and upon such statements shall then " proceed to *determine and declare what persons have been, by the greatest number of votes, duly elected to such offices,*" &c.   It seems that in this system the state board of canvassers is the tribunal of last resort, and that as to all matters pertaining to elections its decision is final, from which there is no appeal.   The use of the word " canvassers " as to both boards seems to indicate something more than ministerial powers.   In the case of *State* v. *Nerland,* 7 *S. C.* 246, Chief Justice Moses said : " The term [canvassers] employed to designate the duty to be performed by the commissioners would seem to impose an obligation beyond that of merely counting the ballots and comparing the statement of managers.   ' Canvassing ' implies ' search,' ' scrutiny,' ' investigation,' ' examination,' " &c.

It seems to us, however, that the duties of the county board to count the votes, make statements and transmit the papers, protests, &c., are so far ministerial in their character as to be liable, if they stood alone and had no reference to the state board, to be enforced by the writ of *mandamus.*   But that board is only a part of the machinery provided to declare the result of elections, and is required to transmit all papers and protests concerning the elections to the state board of canvassers.   *State* v. *Chairman County Canvassers,* 4 *S. C.* 485.   On the contrary, the duties of the board of state canvassers, in all cases of contest and protest, are clearly revisory and judicial, and beyond the reach

of *mandamus*. The words are, " shall then proceed to *determine and declare* what persons have been duly elected, &c. They shall have power, and it is made their duty, *to decide all cases under protest or contest that may arise,*" &c.

" Where boards of canvassers are empowered with the exercise of judicial functions, and the whole question of the election, being authorized not only to perform the ordinary duties of canvassers, but also to *hear and determine* all contested elections, and no appeal lies from their decision, the courts will refuse to interfere by *mandamus* with the exercise of their discretion or judgment, and will regard their decision as final and conclusive." *High on Ex. Leg. Rem.*, §§ 18, 57; *Grier* v. *Shackelford*, 2 *Tread.* 650; *State* v. *Bruce*, 1 *Tread.* 165; *Mayor of Vicksburg* v. *Rainwater*, 47 *Miss.* 547; *Cooley on Const. Lim.* 623.

The restriction in our law upon the powers of the board of state canvassers, expressed in the words " when the power to do so does not, by the constitution, reside in some other body," makes the election for congress an exception. *State, ex rel. Wallace*, v. *Mackey and Hayne*, 8 *S. C.* 377. As to that election, the duty of the state board of canvassers is merely ministerial. They have no right to decide a protest or contest as to the election of a member of congress; that power resides in " another body," viz., the house of representatives of congress, under Section 5, Article I., of the Constitution of the United States, which declares that " each house [congress] shall be the judge of the election returns and qualification of its own members."

2. If we assume that the duties of the county board of canvassers, considered apart from their relation to the state board, are merely ministerial in character, the next question is, whether the petitioners, at the time they made their application for *mandamus*, directed to that board, *had other legal remedy* for the grievance complained of. The purpose of a writ of *mandamus* is to prevent a failure of justice, and if there is other adequate remedy for the wrong complained of, it will not be granted. " From the origin, nature and purposes of the writ, it has been shown to be an extraordinary remedy, applicable only to cases where the usual and accustomed modes of procedure and forms of remedy are powerless to afford relief. It follows, therefore,

from the principles already established, as well as from the very nature and essence of the remedy itself, that the writ never lies where the party aggrieved has another adequate remedy at law by action or otherwise. And the rule will be found to be firmly established as one of the fundamental principles underlying the entire jurisdiction, that the existence of another specific legal remedy fully adequate to afford redress to the party aggrieved, presents a complete bar to relief by the extraordinary aid of a *mandamus.* * * * That while the above is of very ancient origin, it is not confined in its application to cases where the existing remedy relied on in bar of the jurisdiction by *mandamus,* is a common law remedy, but applies with equal force to cases where a particular or special remedy is provided by statute. Whenever, therefore, an express remedy is afforded by statute, plain and specific in its nature, and fully adequate to redress the grievance complained of, *mandamus* will not lie." *High on Ex. Leg. Rem.* 16, 18.

*Had the petitioners such a remedy ?*

So far as the candidates for county officers are concerned, we think they had, and should have exhausted that remedy before applying for *mandamus.* The county board had no right to declare the election, and that distinguishes this case from that of *State* v. *Acting Board of Aldermen,* 1 *S. C.* 30, which was a special municipal election, in which the acting board of aldermen had the right to declare the election—their decision to be binding upon all parties. Here the county board had certain duties to perform, one of which was to transmit all the papers and protests to the state board, which alone had authority to decide and declare the election. This right to be heard before the state board upon all questions was not only a remedy, but the ordinary and appropriate remedy, more " plain and specific " than would have been a right to appeal from one jurisdiction to another, which has been held to be within the principle. *State* v. *Supervisors of Sheboygan,* 29 *Wis.* 79. In this case no formal appeal was necessary, but the papers went up, as matter of course, to the state board—the business was incomplete until that board had acted, which was to be the finishing act under the system provided for declaring the result of elections, and to obtain

which was "the usual and accustomed procedure." The legislature has expressly provided a tribunal by which the rights of petitioners could be decided. The remedy was "speedy," for it was required to be done within ten days; it was "specific," as it related to the same identical subject matter; and that it might be effectual was shown by the results in this case.

The court, in the case of *State* v. *Walker*, 5 *S. C.* 265, say: "Under our laws there are two bodies entrusted with power to ascertain and fix the fact of an election for state and county purposes—the one acting as a primary tribunal and the other as a revisory body. The board of county commissioners is the primary body, and the board of state canvassers is the revisory body. To say that the election fails unless a proper declaration is made by the board of state canvassers, is to destroy entirely the functions of the county board. On the other hand, to allow the board of county canvassers power to make a determination and declaration valid and conclusive, unless reviewed or modified by the revisory body, is to give to each body a distinct, important and entirely consistent function, in harmony with the methods by which we are accustomed to fix the existence of facts, on which legal rights depend."

This appellate court—the state board of canvassers—being open to redress grievances suffered in all state and county elections, the petitioners availed themselves of the remedy—appeared, contested and protested in that tribunal the matter now complained of in court. That tribunal heard the protests, and in the exercise of its discretionary powers changed the result of the election in the precincts of "Haut Gap" and "Black Oak," and, as stated at the bar, altered the returns of the county canvassers in favor of the petitioners to the amount of twenty-five hundred votes. That board has now adjourned *sine die*, but, during its organized existence, it was not subject to *mandamus*. There was no appeal and the matter is ended. It is our duty simply to declare the law, and not to consider whether it is satisfactory or wise—that belongs exclusively to the legislature.

In this connection, also, an exception must be made in regard to the election for congress. As to that election the state, as we have seen, has not given the state board of canvassers revisory

discretionary powers, but has left the matter as provided for by the constitution of the United States. Does the provision of that instrument, before cited, that " each house shall be the judge of the election returns and qualifications of its own members," constitute *another remedy* within the meaning of the rule? That is to say, an adequate, specific remedy, as speedy and as effectual as the writ of *mandamus*. We have not been referred to any case precisely in point, but, considering that the state law has not provided the alleged remedy, which is given by the constitution and laws of the United States, regarding its remoteness and the delays incident to that proceeding, and, judging from analogy, we are inclined to think that it does not afford another remedy in the sense necessary to exclude the right to *mandamus*. " In order to entitle a person to the writ two things must concur. *First.* A clear legal right to have the thing done, to compel the doing of which the writ is sought; and, *second*, that there is no other adequate legal remedy by which the specific performance of the duty can be enforced." *Wood on Mand.* 68, 84, 89, 110; *Marbury* v. *Madison*, 1 *Cranch* 169.

Some confusion in the case has arisen from the fact that the petitioners—one, a candidate for congress, and all the others for county offices—filed a *joint petition*. As appears from what has been already said, we conceive that neither the tribunal to judge nor the manner of finally declaring the election, is the same in the two cases. If E. W. M. Mackey, candidate for congress, had filed his petition separately, praying that the *mandamus* might issue requiring the board of county canvassers to count the votes found in the boxes for him as a candidate for congress, we do not see in the case any conclusive reason why the writ should not have been issued as to him. He did not file a separate petition, but made common cause with the candidates for county offices, and the difference between the offices as to the manner of counting the votes and finally declaring the election, was not called to the attention of the Circuit judge. The petition was presented jointly, and, as presented, was refused. Possibly the application might, even now, be divided, but that seems unnecessary, as the result must be theoretical merely, and can now have no practical effect upon the election.

Subject to the expression of opinion and modification herein made as to the election for congress, the judgment of this court is, that the judgment of the Circuit Court be affirmed and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.